### JACKSON v. CARTER OIL CO. et al.

#### No. 3273.

Circuit Court of Appeals, Tenth Circuit.

Aug. 6, 1946.

F. E. Riddle, of Tulsa, Okl. (A. G. W. Sango, of Tulsa, Okl., and I. F. Bradley, Jr., of Kansas City, Kan., on the brief), for appellant.

Forrest M. Darrough, of Tulsa, Okl. (W. T. Anglin, of Holdenville, Okl., and L. G. Owen, of Tulsa, Okl., for appellee Carter Oil Co.; Glenn O. Wallace, of Holdenville, Okl., for appellee Rhina Jackson, and Rhina Jackson, executrix; and W. M. Haulsee, of Wewoka, Okl., for appellees Ruby P. Norvell, Albert Norvell, Carolyn Norvell Clarke, and Annie Pauline Norvell, on the brief), for appellees.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

This is another chapter in the litigation originating in the United States Court for Eastern Oklahoma concerning a tract of land in Oklahoma, and the proceeds therefrom, allotted to Raymond Jackson, a Seminole freedman. A review of the background, and of the previous suits and proceedings, may be helpful in understanding the manner in which the questions now for determination arise.

The allottee was born in 1903. In October, 1921, he left the home of his parents, Davis Jackson and Rhina Jackson. In January, 1923, the father, assuming to act as guardian for the son, executed an oil and gas lease covering the land. The lease was subsequently acquired by The Carter Oil Company, and oil and gas were discovered. One suit was filed by a person alleging that he was Raymond Jackson, the allottee. He was later commonly referred to as the Kentucky Raymond. Another suit was filed by a different person alleging in like manner that he was Raymond Jackson, the allottee. He was thereafter commonly referred to as the California Raymond, and for the purpose of identification he will be referred to in that manner in this opinion. And a third suit was filed by a person alleging that she was Vivian Jackson; that the allottee was dead; and that she was his surviving widow. The Carter Oil Company was a defendant in each case. The cases were

consolidated; and Davis Jackson, Rhina Jackson, A. S. Norvell, and R. S. Norvell intervened in the consolidated case. Broadly stated, the plaintiff in each of the original cases sought to recover the land and for an accounting for the oil and gas produced from it. On April 18, 1932, a decree was entered in the consolidated case adjudicating among other things that the allottee was dead; that he was killed in November, 1921; that Vivian Jackson was not his surviving widow; and that none of the plaintiffs owned or had any interest in the land or the proceeds therefrom. Other provisions in the decree adjudicated the rights of Davis Jackson, Rhina Jackson, A. S. Norvell, R. S. Norvell, and The Carter Oil Company. The California Raymond sought and was allowed an appeal but he failed to perfect it. The Kentucky Raymond appealed, and the decree was affirmed, Jackson v. Jackson, 10 Cir., 67 F.2d 719. The California Raymond filed another action, denominated an action to impeach the decree of April 18, 1932; and he also filed a motion to vacate the decree. By the amended bill in the action and by the motion to vacate, he attacked the decree on the grounds of fraud and of newly discovered evidence. Issues were joined, evidence was adduced, and on May 3, 1934, the court made findings of fact and conclusions of law, dismissed with prejudice the amended bill in the action to impeach the decree, and denied the motion to vacate the decree. The court found among other things that the California Raymond was not the allottee; that he was an impostor; and that the proof failed to establish the allegations of fraud in the procurement of the earlier decree. Plaintiff sought an appeal but failed to perfect it, and the defendants caused the appeal to be docketed and dismissed. The California Raymond thereafter sought leave to file a bill of review to impeach the decree of April 18, 1932, and that of May 3, 1934. An order was entered granting leave to file the bill. The defendants filed motions to vacate the order granting leave to file the bill, and an order was entered vacating the former order granting the leave to file.

Acting through a guardian, the California Raymond filed still another action in the nature of a bill of review in which he alleged in substance that he was the allottee; that the decree of April 18, 1932, was tainted with extrinsic fraud; and that the only issue tried and determined in the decree of May 3, 1934, was whether there was sufficient newly discovered evidence to entitle plaintiff to impeach the decree of April 18, 1932. Issues were joined; and on December 2, 1939, the court dismissed the action with prejudice. An appeal was taken but was later dismissed for failure to prosecute.

Then came this action in which the California Raymond again attacked the decrees of April 18, 1932, and May 3, 1934, respectively. By answer, the defendants pleaded the various earlier proceedings. On May 4, 1944, the court entered summary judgment dismissing the action with prejudice and enjoining plaintiff from filing or prosecuting further suits or proceedings against the defendants, or their successors in interest, based upon the claim that he was the allottee of the land involved. Plaintiff gave notice of appeal but failed to perfect it; and on motion of the appellees, the appeal was docketed and dismissed. Plaintiff later filed in the action in the trial court a motion in the nature of a bill of review to vacate and set aside the summary judgment entered on May 4, 1944. The court entered an order denying the motion, and plaintiff appealed.

The contentions of the appellant cover a wide range. The litigation from beginning to end is discussed. Much is said about extrinsic fraud, particularly in the action in which judgment was entered on April 18, 1932, and of newly discovered evidence. But the appeal before us is not from any of the several judgments. It is from the order denying the motion to vacate and set aside the summary judgment entered on May 4, 1944, and therefore the only question open to review is whether the denial of that motion constituted error.

The grounds of the motion were that through fraud and collusion, plaintiff did not have a fair opportunity at the trial of

the action resulting in the judgment of May 4, 1944, to present his newly discovered evidence on which the action was founded; that such newly discovered evidence consisted of six affidavits and a photograph; that they were in the possession of an attorney in Chicago representing plaintiff; that the attorney assured plaintiff that he would produce them at the trial; that plaintiff relied upon the attorney to produce them; that he failed to do so; and that he advised plaintiff that he had been importuned not to release them, stating that they were worth more than $5000 to him. Copies of the affidavits were attached to the motion. One was made by Rhina Jackson, one by Aaron Jackson, one by Booker Jackson, one by Roxie Jackson Gallimore, one by Myrtle Hill, and one by Sidney Harris. The substance of the respective affidavits was that plaintiff was the son of Rhina Jackson, the brother of Aaron Jackson, Booker Jackson, Roxie Jackson Gallimore, and Myrtle Hill; and that Sidney Harris knew plaintiff to be Raymond Jackson, and on one occasion saw and heard Davis and Rhina Jackson recognize and call him their son. The photograph was of a group, said to include plaintiff, Rhina Jackson, Aaron Jackson, and Myrtle Jackson Hill. The order denying the motion expressly recites that the motion came on for hearing, that plaintiff offered evidence in support of it, and that at the conclusion of the evidence the court found that the motion should be in all respects denied. It thus appears that evidence was adduced and heard in connection with the motion. But the evidence is not in the record. For aught the record discloses, the evidence may have failed completely to sustain the material allegations of fact contained in the motion. It may have negated the truth of some of the allegations. Furthermore, we are not mindful of any rule in the law of evidence making ex parte affidavits of that kind admissible if they had been available at the trial and tendered in evidence. Manifestly, there is no basis in the record for the conclusion that the court erred in denying the motion.

The order appealed from is affirmed.